UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

OWEN JOSEPH BATTICE,            )
                                )
              Plaintiff,        )     Case No. 1:12-cv-1389
                                )
v.                              )     Honorable Robert Holmes Bell
                                )
COMMISSIONER OF                 )
SOCIAL SECURITY,                )
                                )     **REPORT AND RECOMMENDATION**
              Defendant.        )
_____)

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB) and supplemental security income (SSI) benefits. On November 2, 2009, plaintiff filed his applications for benefits alleging a July 21, 2007 onset of disability.[1] (A.R. 142-54). His claims were denied on initial review. On April 11, 2011, he received a hearing before an administrative law judge (ALJ), at which he was represented by counsel. (A.R. 28-60). On April 20, 2011, the ALJ issued his decision finding that plaintiff was not disabled. (A.R. 13-22). On October 26, 2012, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

_____

[1] SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, December 2009 is plaintiff's earliest possible entitlement to SSI benefits.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision. Plaintiff argues that the ALJ's decision should be overturned on the following grounds:

1. The ALJ committed reversible error by not properly weighing the evidence, by elevating the opinion of a non-examining physician over the opinions of examining physicians and by improperly dismissing the opinion of a consulting physician;

2. The ALJ committed reversible error by questioning the plaintiff's credibility without considering that he did not have the financial resources to obtain or continue medical treatment and also by penalizing him for having sought work in the past; and

3. The ALJ committed reversible error because his finding that there were a significant number of jobs that plaintiff was capable of performing is not supported by substantial evidence.

(Plf. Brief at 14, docket # 13). I recommend that the Commissioner's decision be affirmed.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence

shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013)("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

**Discussion**

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from July 21, 2007, through the date of the ALJ's decision. (A.R. 15). Plaintiff had not engaged in substantial gainful activity on and after July 21, 2007. (A.R. 15). He had the following severe impairments: "degenerative disc disease, status post diskectomy, and angina." (A.R. 15). He did not have an impairment or combination of impairments which met or equaled the

requirements of the listing of impairments. (A.R. 16). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can lift, carry, push, or pull ten pounds using his left non-dominant upper extremity. He can occasionally perform postural activities. The claimant can never climb ladders, ropes, or scaffolding. He can occasionally reach with his left non-dominant upper extremity and occasionally use left arm controls. He can never experience concentrated exposure to extremes in temperature, humidity, or hazards. The claimant cannot perform work using his arms away from his body. He must be able to change his position from sitting to standing at will.

(A.R. 16). The ALJ found that plaintiff's testimony regarding his subjective limitations was not fully credible. (A.R. 16-20). Plaintiff was unable to perform any past relevant work. (A.R. 20). He was 50-years-old as of his alleged onset of disability and 53-years-old as of the date of the ALJ's decision. Thus, he was classified as an individual closely approaching advanced age at all times relevant to his claims for DIB and SSI benefits. (A.R. 21). Plaintiff has at least a high school education and is able to communicate in English. (A.R. 21). The transferability of work skills was not material to a disability determination. (A.R. 21). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question posed by the ALJ, the VE testified that there were approximately 4,700 jobs in Michigan's Lower Peninsula that the hypothetical person would be capable of performing. (A.R. 50-58). The ALJ found that this constituted a significant number of jobs. Using Rule 202.14 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled. (A.R. 21-22).

**1.**

Plaintiff argues that the ALJ committed reversible error "by not properly weighing the evidence, by elevating the opinion of a non-examining physician over the opinions of examining physicians and by improperly dismissing the opinion of a consulting physician." (Plf. Brief at 14). The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance"[2] is attached to physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

The ALJ is responsible for weighing conflicting medical opinions, not the court. *Buxton*, 246 F.3d at 775; *accord White v. Commissioner*, 572 F.3d 272, 284 (6th Cir. 2009). The opinions of treating physicians are generally given significant weight. *See Wilson v. Commissioner*, 378 F.3d 541, 544-45 (6th Cir. 2004). Here, the ALJ noted that Michael Kennedy, M.D., a treating surgeon, Grant Hyatt M.D., an orthopedic surgeon and consultative examiner, and Donald Sheill,

---

[2]"We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section." 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

M.D., a consultative examiner, all offered opinions that plaintiff was capable of performing a range of light work.[3] (A.R. 17-20; *see* A.R. 330-40, 384-402, 426-43, 458-63, 464-69). The ALJ found that these opinions were persuasive and well supported by objective medical evidence and incorporated them into his factual finding that plaintiff retained the RFC for a limited range of light work.[4]

Plaintiff argues that the ALJ erred in rejecting the opinion of Dr. Stephen Montes because "it was favorable to the Plaintiff and/or because it was requested by Plaintiff's attorney." (Plf. Brief at 15). Dr. Montes was a consultative examiner, not a treating physician. The opinions of a consultative examiner are not entitled to any particular weight. *See Norris v. Commissioner*, 461 F. App'x 433, 439 (6th Cir. 2012). Dr. Montes is a certified orthopedic surgeon and physician who examined plaintiff on February 17, 2011, on a referral from plaintiff's attorney. (A.R. 470-84).

There is "nothing fundamentally wrong with a lawyer sending a client to a doctor." *Blankenship v. Bowen,* 874 F.2d 1116, 1122 n.8 (6th Cir. 1989) (*per curiam*). Courts have recognized that the results of a consultative examination should not be rejected "solely" because it was arranged and paid for by the plaintiff's attorney. *See Hinton v. Massanari*, 13 F. App'x 819, 824 (10th Cir. 2001) ("An ALJ may certainly question a doctor's credibility when the opinion, as here, was solicited by counsel. ... The ALJ may not automatically reject the opinion for that reason alone, however."). Some courts have criticized ALJs for referring to opinions like Dr. Montes's as "purchased opinions," but such statements do not provide a basis for overturning an ALJ's decision.

---

[3] RFC is the most, not the least, a claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007).

[4] Another treating physician, Rodney Kilpatrick, D.O., opined that plaintiff could lift up to 40 pounds. (*see* A.R. 371, 373-75, 377, 380, 382).

*See, e.g.*, *Mason ex rel. Mason v. Astrue*, No. 10-621-M, 2011 WL 2670005, at *6 (S.D. Ala. July 6, 2011); *Milan v. Commissioner*, No. 09-1065, 2010 WL 1372421, at *10 n. 3 (D.N.J. Mar. 31, 2010). Here, the ALJ did not reject Dr. Montes's opinions "solely" or even primarily on the basis that his one-time examination occurred on a referral from plaintiff's counsel. It was entirely appropriate for the ALJ to note that Dr. Montes had examined plaintiff on a referral from plaintiff's attorney and that the purpose of the examination was to generate evidence in support of plaintiff's claims for DIB and SSI benefits. *See DeVoll v. Commissioner*, No. 99-1450, 2000 WL 1529803, at *1 (6th Cir. Oct. 6, 2000); *Pentecost v. Secretary of Health & Human Servs.*, No. 89–5014, 1989 WL 96521, at *1 (6th Cir. Aug. 22, 1989); *see also Gilmore v. Astrue*, No. 2:10-54, 2011 WL 2682990, at *8 (M.D. Tenn. July 11, 2011). Plaintiff spent a total of forty-five minutes in Dr. Montes's office on February 17, 2011. (A.R. 472). Montes prepared a report in which he concluded that plaintiff was "incapable of any gainful employment, not even sedentary type employment on an 8 hour day, 5 days a week, 50 weeks a year basis" (A.R. 476) and he completed a RFC questionnaire for plaintiff's attorney (A.R. 479-84).

Dr. Montes was not a treating physician. *See Smith v. Commissioner*, 482 F.3d 873, 876 (6th Cir. 2007); *see also Louden v. Commissioner*, 507 F. App'x 497, 498 (6th Cir. 2012); *Kornecky v. Commissioner*, 167 F. App'x 496, 506 (6th Cir. 2006). Because Dr. Montes was not a treating physician, the ALJ was not "under any special obligation to defer to [his] opinion[s] or to explain why he elected not to defer to [them]." *Karger v. Commissioner*, 414 F. App'x 739, 744 (6th Cir. 2011). The ALJ carefully considered Dr. Montes's opinions and determined that the extreme restrictions suggested by Dr. Montes were entitled to little weight. He found that Montes's opinions on the issues of disability and RFC were entitled to little weight because those issues are reserved

to the Commissioner. (A.R. 19). Further, Dr. Montes offered opinions as to plaintiff's limitations in September 2007 (A.R. 479-82), "despite the fact that he only examined the claimant once on February 17, 2011." (A.R. 19). He "opined a remote onset date despite the lack of longitudinal evidence of record in support thereof." (A.R. 19). Dr. Montes's opinions "appear[ed] to be largely based on the subjective symptoms the claimant reported." (A.R. 19). A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all." *Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011). The ALJ found that the restrictions Dr. Montes suggested were not well-supported by medically acceptable clinical and laboratory diagnostic techniques and were inconsistent with other substantial evidence in the record. (A.R. 19). The ALJ's decision to give little weight to Dr. Montes's opinions is well-supported and entirely consistent with applicable law.

Plaintiff attempts to bolster Dr. Montes's opinion by arguing that the ALJ gave too much weight to the opinion of a non-examining physician, Daniel Dolanski, D.O. He asserts that the ALJ should have given more weight to Dr. Montes's opinion, because he examined plaintiff and that Dr. Dolanski's opinion was based on the incomplete record available to him in December 2007. (Plf. Brief at 16). Plaintiff is correct that an examining relationship is one of the factors an ALJ is to consider when weighing medical opinions.[5] *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also McClean v. Colvin*, No. 3:11-cv-236, 2013 WL 4507807, at * 8 (M.D. Tenn. Aug. 23, 2013) ("[R]espective examining and non-examining status [is] only one of several relevant factors[.]"). Consistency is another important factor: "Generally, the more consistent an opinion is with the

---

[5]"Generally, we give more weight to the opinion of a source who has examined you than the opinion of a source who has not examined you." 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1).

record as a whole, the more weight we will give to that opinion." 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). In addition, "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Commissioner*, No. 1:12-cv-2219, 2013 WL 5467172, at * 5 (N.D. Ohio Sept. 30, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i)); *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *see also Brooks v. Commissioner*, 531 F. App'x 636, 642 (6th Cir. 2013) ("[I]n appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."). The ALJ treated Dr. Dolanski's opinion as "expert opinion evidence by a non-examining source." (A.R. 19). The ALJ found that Dr. Dolanski's opinion was entitled to significant weight, because he was an expert familiar with the applicable standards and his opinion was consistent with the medical evidence of record. This finding was consistent with Social Security law and regulations and provides no ground for reversal.

**2.**

Plaintiff argues that the ALJ "committed reversible error by questioning the Plaintiff's credibility without considering that he did not have the financial resources to obtain or continue medical treatment and also penalizing him for having sought work in the past." (Plf. Brief at 14). Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528. The court cannot substitute its own credibility determination for the ALJ's. The

court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir. 2012). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge [his] subjective complaints." *Buxton v. Halter*, 246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

Plaintiff testified that he experienced lower back, leg, and chest pain that prevented him from working, and that he took over-the-counter medication for pain relief. (A.R. 33-35). The ALJ found that plaintiff's testimony was not fully credible and that plaintiff was capable of performing a limited range of light work:

> After examining the claimant's testimony in light of the objective medical evidence of record, the undersigned notes that the claimant was not fully credible as to the extent of his impairments.
>
> Despite the complaints of allegedly disabling symptoms, there have been significant periods since the alleged onset date during which the claimant has not taken any prescription medications for those symptoms. Despite the fact that he was given nitroglycerine sl for his chest pain he has never used it (7F/1, 17F/2). The claimant instead chooses to take aspirin and sit for 30 to 60 minutes to wait for the pain to pass (7F/1). The claimant noted that he takes only Tylenol for pain on numerous occasions as well (6F/8, 18F/4). Dr. Kennedy noted

that the claimant does not require any narcotics or chronic pain medication (6F/5). The claimant admitted to Dr. Kilpatrick that he weaned himself off all medication (5F/12). The claimant is on record as having decided to discontinue use of blood pressure medication on his own accord (7F/1). The claimant's history of medication suggests that the symptoms may not have been as limiting as the claimant has alleged in connection with this application.

The claimant testified under oath at the hearing that he has applied for jobs but no one is hiring. The claimant continuing to apply for work suggests that an inability to obtain work, as opposed to an inability to perform work, may be a motive behind the current application. Additionally, the claimant applied for state unemployment benefits after the alleged onset date in this case. In order to qualify for such benefits, applicants typically must affirm that they are capable of working. Thus, the claimant apparently claimed the ability to work when applying for another form of government benefits, while currently alleging an inability to work during the same time, which brings into question the reliability of the claimant's allegations generally.

The record reveals that the claimant's allegedly disabling impairments were present at approximately the same level of severity prior to the alleged onset date. The fact that the impairments did not prevent the claimant from working at that time strongly suggests that it would not currently prevent work. In fact, the claimant was noted as performing well when following his doctor's suggested restrictions.

(A.R. 19-20).

Plaintiff argues that the ALJ "made ridiculous assumptions about Plaintiff's credibility." (Plf. Brief at 16). He asserts that the ALJ erred by holding plaintiff's failure to seek medical treatment against him without first considering whether plaintiff could afford treatment. (*Id*.). A claimant's failure to seek medical treatment over an extended period of time is often a factor to be considered against the claimant's assertion of a disabling condition.[6] *See Strong v. Social Security Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment" and "[a] failure to do so may cast doubt on the claimant's assertions of

---

[6]The rule is not without exception. "In some circumstances, of course, a failure to seek examination or treatment may say little about a claimant's truthfulness." *Strong*, 88 F. App'x at 846. (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 2004)).

disabling pain."); *see also Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing Credibility of an Individual's Statements*, SSR 96-7p (reprinted at 1996 WL 374186, at * 7) (SSA July 2, 1996) ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints . . . ."). SSR 96-7p states that before drawing an adverse inference from the claimant's failure to seek or pursue regular medical treatment, an ALJ must first "consider[] any explanations the individual may provide or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." 1996 WL 374186, at * 7. Here, the ALJ's credibility determination did not rely on the general rule that a claimant's failure to seek treatment over an extended time period undercuts his assertion that his impairments are disabling.[7] (A.R. 19). Rather, the ALJ drew an appropriate adverse inference from plaintiff's failure to follow medical advice. By way of example, even though plaintiff "was given nitroglycerine for his chest pain," he did not use it. (A.R. 20). He "decided to discontinue the use of blood pressure medication of his own accord." (A.R. 20). The claimant bears the burden of demonstrating good reasons for his failure to follow prescribed treatment: "If you do not follow the prescribed treatment without good reason, we will not find you disabled." 20 C.F.R. §§ 404.1530(b), 416.930(b). The Sixth Circuit recognizes that a claimant's failure to follow prescribed treatment is evidence supporting an ALJ's factual finding that the

---

[7] Plaintiff's reliance on case law from the Eastern District is misplaced. (Plf. Brief at 16; Reply Brief at 2). The Eastern District's decision in *Stennett v. Commissioner*, 476 F. Supp. 2d 665 (E.D. Mich. 2007), is not binding precedent in this court. *See Michigan Elec. Employees Pension Fund v. Encompass Elec. & Data, Inc.*, 556 F. Supp. 2d 746, 761-62 (W.D. Mich. 2008). Here it is not persuasive authority, because the facts the court confronted in *Stennett* are not remotely similar. In *Stennett*, the court found that the ALJ erred because he attributed the claimant's failure to attend physical therapy to medical improvement, but the underlying medical record revealed that the claimant had stopped attending physical therapy "because he had opted the more aggressive [surgical] treatment suggested by his doctor." 476 F. Supp. 2d at 673.

claimant's testimony was not fully credible. *See Sias v. Secretary of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988). The ALJ's observation that plaintiff was not always compliant with his medications was appropriate and well supported. Plaintiff's failure to follow prescribed treatment undercut the credibility of his testimony regarding his subjective functional limitations. *See Sias*, 861 F.2d at 480. His use of over-the-counter pain medications undercut his claims of disabling pain. *See Warner v. Commissioner*, 375 F.3d 387, 392 (6th Cir. 2004); *see also Branon v. Commissioner*, 539 F. App'x 675, 678 (6th Cir. 2013).

Plaintiff's remaining argument regarding credibility is more readily quoted than summarized:

> During his hearing, Plaintiff was quite open about the fact that he had followed the suggestions of his doctors and had tried to find work, only to file for unemployment benefits when unsuccessful (34). But, as he also testified, he had questioned his ability to continue working because of his ongoing pain (34). The ALJ made this testimony sound as if Plaintiff was being dishonest when he was being anything but dishonest. When many cases, such as *Salamalekis v. Commissioner of Social Security*, 221 F.3d 828, 832 (6th Cir. 2000), expressly discuss the rules which allow an applicant to perform a trial of work, and when this Plaintiff expressly followed the advice of his physician in trying to find work without success, how could any rational Court hold that against him? And if this ALJ's findings are allowed to stand, what message is sent to other claimants who might want to see if they could work?

(Plf. Brief at 17). Rhetorical questions aside, this case has never involved any question of a trial work period. "[T]he trial work period provided for in [20 C.F.R.] § 404.1592 was designed to permit a claimant, already determined to be disabled, to test his ability to work and still be considered disabled." *Allen v. Apfel*, 3 F. App'x 254, 258 (6th Cir. Jan. 23, 2001) (citing *Salamalekis*, 221 F.3d at 831); *see also Smith v. Social Security Admin.*, No. 13-30044, 2013 WL 4046448, at * 1 n.1 (5th Cir. Aug. 12, 2013); *Stanton v. Astrue*, 370 F. App'x 231, 235 (2d Cir. 2010) ("Whatever arguments might be advanced for encouraging trial work periods by persons uncertain as to their disability status, until Congress provides otherwise, we identify no error in an ALJ considering evidence of

work activity in deciding an initial disability claim."). Plaintiff's "reliance upon a trial work period analogy is misplaced," because he had never been adjudicated disabled and entitled to benefits. *Allen v. Apfel*, 3 F. App'x at 258.

It was entirely appropriate for the ALJ to draw an adverse inference regarding plaintiff's credibility from his application for unemployment benefits during the period he claims to have been disabled. *See Workman v. Commissioner*, 105 F. App'x 794, 801 (6th Cir. 2004) ("Applications for unemployment and disability are inherently inconsistent."); *see also Smith v. Commissioner*, No. 1:12-cv-904, 2014 WL 197846, at * 16 (6th Cir. Jan. 15, 2014); *Barton v. Astrue*, No. 3:11-cv-1239, 2013 WL 6196297, at * 7 (M.D. Tenn. Nov. 27, 2013); *Messina v. Colvin*, No. 3:12-cv-150, 2013 WL 4852328, at * 11 (E.D. Tenn. Sept. 10, 2013); *Davenport v. Commissioner*, No. 10-11350, 2011 WL 2601017, at * 7 (E.D. Mich. May 9, 2011).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Commissioner*, 245 F.3d at 534. I find that the ALJ correctly applied the law and that his factual finding regarding plaintiff's credibility is supported by more than substantial evidence.

**3.**

Plaintiff argues that the ALJ did not have substantial evidence to support his finding that plaintiff could perform a significant number of other jobs in the regional economy. (Plf. Brief at 17-18; Reply Brief at 3). The VE identified 4,700 jobs in Michigan's Lower Peninsula that a hypothetical person of plaintiff's age with his RFC, education, and work experience would be capable of performing. (A.R. 51-58). This constitutes a significant number of jobs. *See Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993) (1,400 is a significant number); *Hall v. Bowen*, 837 F.2d

272, 275 (6th Cir. 1988) (1,350 is a significant number); *Martin v. Commissioner,* 170 F. App'x 369, 375 (6th Cir. 2006) (870 jobs is a significant number); *see also Nejat v. Commissioner*, 359 F. App'x 574, 579 (6th Cir. 2009) (collecting cases holding that as few as 500 jobs constituted a significant number). It is well settled that a VE's opinion, given in response to an accurate hypothetical, is sufficient to satisfy the substantial evidence test.

### Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated: February 25, 2014  /s/ Joseph G. Scoville
United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).